NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARVIN SIMON, as Authorized Representative For the Marvin Simon Trust, as amended, for Palm Investors, LLC and for the Jeffrey Markman 1993 Irrevocable Trust, MARILYN SIMON, CLAUDE HARRIS, ANN HARRIS, BEN SIMON, HEIDI SIMON, BRITT SIMON, KIM FINK, ANDREW FINK, AMY GOLDBERG, STEFAN RESSING, Individually and as Trustee of the S. Ressing 1999 Trust, FITZROY VENTURES, LLC, MICHAEL LE, Individually and as Trustee of the ML Lee 1999 Trust, and MACKENZIE VENTURES LLC,<br><br>          Plaintiffs,<br><br>          v.<br><br>KPMG LLP and SIDLEY AUSTIN BROWN & WOOD LLP, f/k/a BROWN & WOOD, LLP,<br><br>          Defendants | : : : : : : : : : : : : : : : : : : : : : : : : : : | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 05-CV-3189 (DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Representative Plaintiffs Marvin Simon, et al. pursuant to Fed. R. Civ P. 23(e) for Final Class Certification of this Action for Settlement Purposes and Final Approval of the Settlement Agreement with Defendants KPMG LLP and Sidley Austin Brown & Wood ("Defendants"). A hearing on the application for Class Certification and Final Approval was held by this Court on May 26, 2006. For the reasons set forth below, the Court grants Representative Plaintiffs' motions and approves the Settlement Agreement.

# I. BACKGROUND[1]

## A. Initial and Amended Complaint

On June 24, 2005, Plaintiffs brought this class action against Defendants, seeking redress for damages caused to a class of taxpayers who purchased abusive tax shelter strategies. Plaintiffs filed an amended class action complaint on September 27, 2005. Pursuant to the Amended Complaint, Plaintiffs seek redress for a class of taxpayers who purchased tax strategies known as Foreign Leveraged Investment Program (FLIPS), Offshore Portfolio Investment Strategy ("OPIS"), Bond Linked Issue Premium Structure ("BLIPS"), or Short Option Strategy ("SOS") (collectively, the "Tax Strategies"), from January 1, 1996 through and including September 14, 2005 (the "Class Period"), and who either (a) consulted with, relied upon, or received an oral or written opinion or advice from both of the Defendants (or any current or former partner, principal, or employee of either of them) concerning a Tax Strategy and who in whole or in part Implemented, directly or indirectly, such Tax Strategy; or (b) filed a tax return (joint or otherwise) relating to participation in the same Transaction and Tax Strategy described in (a). The proposed Class also includes all Persons that were formed in connection with or were utilized by a Class member in Implementing a Tax Strategy, but excludes any Person who has released all Released Claims against Sidley Austin and KMPG or for whom all such Released Claims have otherwise been dismissed, and also excludes any Person who is or was a partner, principal or employee of either the Defendants, and any Third Party. A Third Party is any Person who actually or allegedly participated, directly or indirectly, in any aspect of the design, marketing, review or Implementation of or decision to enter into a Tax Strategy, other than the

---

[1]Unless otherwise specified herein, capitalized terms have the meanings set forth in the Stipulation of Settlement, Amended Stipulation of Settlement, and Plaintiffs' Memorandum of Law in Support of Representative Plaintiffs' Motion for Final Class Certification of this Action for Settlement Purposes.

Defendants and the Defendants' Related Parties.  (See Stipulation of Settlement at 2-3.)

In the Amended Complaint, Plaintiffs allege that Defendants and certain other parties engaged in a scheme to defraud Plaintiffs and others similarly situated in connection with certain Tax Strategies by fraudulently misrepresenting that the Tax Strategies would reduce tax liability and were "more likely than not" to be approved by the Internal Revenue Service ("IRS") when in fact Defendants knew that the Tax Strategies were abusive tax shelters that would not pass IRS scrutiny.  (Am Comp. ¶2.)  Plaintiffs paid substantial fees for these tax products to Defendants and Non-Parties, but now have been subjected to audits of their state and federal tax returns, and have been, or will be assessed millions of dollars in back taxes that they were told they would be able to avoid through the Tax Strategies.  (Am. Comp. ¶4.)  Plaintiffs allege the Defendants are liable on multiple theories, including fraud, civil conspiracy, breach of fiduciary duty, breach of contract, professional malpractice, unjust enrichment, and the charging of unethical, excessive and illegal fees.  (Am. Comp.).

Defendants contend, *inter alia*: (a) the claims against Defendants by a significant number of the proposed Class Members are time-barred; (b) proposed Class Members worked cooperatively and knowingly with the Defendants in Implementing the Tax Strategies; (c) the proposed Class Members are sophisticated individuals, many with their own tax advisors, who were well aware of the risks involved in participating in Tax Strategies; (d) the proposed Class Members understood that they might be audited by the IRS and that the IRS might challenge the Tax Strategies; and (e) proposed Class Members were given written disclosures informing them that the opinions given with respect to the Tax Strategies were not guarantees and that no promise or representation was being made that the Tax Strategies would be upheld if challenged by the IRS.  Defendants further contend that even if the Plaintiffs or proposed Class Members

could establish liability against them, any damage recovery would be limited because: (a) Class Members would be found contributorily negligent for their knowing participation in the Tax Strategies; (b) a trier of fact would have little sympathy for successful, high-net worth individuals who sought to reduce or eliminate significant tax obligations; and (c) Class Members would not be able to recover back taxes, interest or penalties as a matter of law.

**B. Settlement Negotiations**

The Parties[2] first exchanged phone calls about arranging a meeting in the Summer of 2004. On August 17, 2004, the parties held their first meeting in New York. From this date through March 30, 2005, the Parties engaged in numerous in-person meetings and telephone conferences and exchanges of information, during which they identified and discussed issues in dispute and the mechanics of a possible class-wide resolution. On January 5, 2005, the parties began to discuss mediation as a possible means to resolve their differences, and subsequently hired the Hon. Nicholas H. Politan (ret.) and the Hon. Daniel Weinstein (ret.) to assist in the effort to determine whether a class action settlement could be reached. Thereafter, Plaintiffs' counsel and Defendants' counsel participated in four in-person sessions with the Mediators, on April 4, April 5, May 11 and September 14, 2005, and numerous telephonic sessions with the Mediators both before and after the in-person mediation sessions, and continued to exchange information. The Parties also met on June 22 and June 23, 2005, with the Mediators participating by telephone, and had numerous subsequent discussions. As a result of this process,

---

[2]"Parties" means Plaintiffs and Defendants but does not include the intervenors, Thomas R. Becnel, individually and as trustee of the Becnel Family Trust and CST Trust, BCTS LLC and Jardine Ventures LLC, Mark Kottler, Karen Long and Robert E. Long (collectively, the "Intervenors").

the Parties reached the Initial Proposed Settlement, which was based on a proposal by the

Mediators.  Due to the large number and transaction costs of Class Members who initially elected

to opt-out, the Parties requested further assistance from the Mediators in amending the Initial

Proposed Settlement.  These further discussions included in-person negotiation sessions between

the Parties under the supervision of the Mediators, as well as written and oral communication

between the Parties.  The discussions resulted in an Amended Proposed Settlement.  This Court

preliminarily approved the Amended Settlement on March 22, 2006.

## C. The Proposed Settlement

The proposed Settlement provides for a total recovery for the Class of $153,920.847.60,

including certain administrative and related expenses of the Settlement, plus an additional fund

of $24,624,750.00 for any award of attorneys' fees and the reimbursement of Plaintiffs' counsels'

costs and expenses, in exchange for release of the Class' claims concerning or relating to Tax

Strategies.  Monies are allocated to individual Class members by Special Masters already

preliminarily appointed by the Court (and whose fees and expenses will be paid from the

Settlement Payment Amount) based upon their Transaction Costs.  Transaction Costs are defined

in the Settlement to mean (i) fees paid by or on behalf of a Class Member in connection with

participation in the Tax Strategy, (ii) plus losses sustained in connection with the related

investments, (iii) less gains sustained in connection with the related investments, (iv) less any

Tax Benefits, and (v) less the net amount received from either Defendant in any prior Settlement

of a Released Claim.  It does not include (i) any back taxes, penalties or interest, (ii) any fees,

costs or expenses incurred in connection with any IRS or other taxing authority's audit or any

5

litigation in connection with, arising out of, or relating to the Tax Strategy, or (iii) any exemplary

damages or consequential damages, except that any of these may be considered by the Special

Masters in awarding Special Relief.

Special Masters, based upon information provided by the Parties, will initially place

Claimants who do not opt out into three categories:

- Category I: Those whose Transaction Costs are greater than zero and all of whose Core Claims appear to be time-barred;
- Category II: All others whose Transaction Costs are greater than zero;
- Category III: Those whose Transaction Costs are zero or less than zero.

Category I claimants who believe an error was made may petition the Special Master to be

moved to Category II, and Category III Claimants who believe an error was made may petition

the Special Master to be moved to Category I or Category II, as appropriate.

Category I Claimants will be paid an amount equal to 25% of their Transaction Costs.

Category II Claimants will be paid an amount equal to 65% of their Transaction Costs, and will

be entitled to seek Special Relief of up to a total of 130% of their Transaction Costs based upon

special circumstances.  Category III Claimants will receive 10% of the mathematical average of

the sum of the amounts the Special Master determines should be distributed to each Claimant

from Category II who participated in the same Tax Strategy as the Category III claimants.  If

funds remain at the end of the process, then the remaining monies will be distributed to

Claimants on a pro rata basis after payment of any unpaid costs or fees incurred in administering

such re-distribution.  In no event are any Settlement Payment Amount funds to be returned to

Defendants.

## II. Final Certification of the Class for Settlement Purposes

In the Preliminary Approval Order entered on October 31, 2005 (amended by the Court's entry of the Amended Settlement Stipulation on March 22, 2006), this Court preliminarily certified this Class for settlement purposes pursuant to Rules 23(a) and 23(b)(1) and (b)(2). Class Counsel now ask this Court for final certification of the Class[3] for settlement purposes.

### A. Standard

When deciding whether to certify a class, a court's decision must be based on a rigorous analysis of the facts of the particular case. See Gen.Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 155 (1982). However, courts should not examine the merits of the underlying claims presented by the class representatives. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974). A District Court judge does have the discretion to "probe behind the pleadings" before making a determination on whether a motion for class certification should be granted. Gen. Tel

---

[3]The "Class" includes:

All persons who, at any time during the period from January 1, 1996, through and including September 14, 2005, either (a) consulted with, relied upon, or received an oral or written opinion or advice from both KPMG (or any current or former partner, principal or employee of KPMG who at the time was a partner, principal or employee of KPMG) and Sidley Austin Brown & Wood LLP, or its predecessor Brown & Wood, LLP (or any current or former partner or employee of either of them who at the time was a partner or employee of the firm) concerning a Tax Strategy and who in whole or in part Implemented, directly or indirectly, such Tax Strategy; or (b) filed a tax return (joint or otherwise) relating to participation in the same Transaction and the same Tax Strategy described in (a); and (c) the administrator, executors, personal representatives, heirs, successors, beneficiaries, and assigns of all Persons described in (a) and (b); and all Persons that were formed in connection with or were utilized by a Class Member in Implementing a Tax Strategy.

The Class excludes, however, any Person, described in (a), (b) or (c) above who as of September 14, 2005 has released, or reached a settlement agreement in principle to release, all Released Claims against KPMG and Sidley Austin Brown & Wood LLP (including its predecessor Brown & Wood LLP) or for whom all Released Claims have otherwise been dismissed with prejudice against KPMG and Sidley Austin Brown & Wood LLP (and, to the extent applicable, its predecessor Brown & Wood LLP). The Class also excludes any Person who is or was a partner, principal or employee of either of the Defendants, and excludes any Third Party.

<u>Co.</u>, 457 U.S. at 161.  A District Court may only certify a proposed class if the class meets all four requirements of Rule 23(a) of the Federal Rules of Civil Procedure.  <u>Abraham Fotta v. Trustees of the United Mine Workers of America</u>, 319 F.3d 612, 618 (3d Cir. 2002).

### 1. The Four Requirements of Rule 23(a)

Pursuant to Rule 23, a plaintiff must show: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) common questions of law and fact exist as to the whole class ("commonality"); (3) the claims of representative parties are typical of the claims of the class as a whole ("typicality"); and (4) representative parties will fairly and adequately protect the interests of the class ("adequacy of representation").  Fed. R. Civ. P. 23(a); <u>In re Prudential Ins. Co. Of America Sales Litig.</u>, 148 F.3d 283, 308-09 (3d Cir. 1998).  Additionally, once all four elements of Rule 23(a) are established, a plaintiff must then demonstrate that the proposed class satisfies one of the three subsections of Rule 23(b) of the Federal Rules of Civil Procedure.

### 2. The Requirements of Rule 23(b)

Here, Plaintiffs seek class certification pursuant to subsection (3) of Rule 23(b).  Rule 23(b)(3) requires a moving party to first show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other methods for the fair and efficient adjudication of the controversy" before a court may certify a class.  Questions of law or fact will be considered "predominate" if the common issues constitute a "significant part" of the individual cases.  <u>Chiang v. Venman</u>, 385 F.3d 256, 273 (3d Cir. 2004).  The existence of individual questions of fact as to each class member does not mean that "common questions of law and fact do not

predominate over questions affecting individual members as required by Rule 23(b)(3)." Id., quoting Eisenberg v. Gagnon, 766 F.2d 770, 786 (3d Cir. 1985). "Common issues predominate when the focus is on the defendant's conduct and not on the conduct of the individual class members." See In re Mercedes-Benz Antitrust Litig., 213 F.R.D. 180, 187 (D.N.J. 2003).

Second, pursuant Rule 23(b)(3), a court must consider: (A) the interest of class members in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

## B. Plaintiff Meets the Requirements of Rule 23(a)

The party seeking class certification carries the burden of showing the requirements of Rule 23 are met. See Katz v. Carte Blanche Corp., 496 F.2d 747 (3d Cir. 1974). Here, Plaintiff carries this burden and satisfies all four prongs of 23(a) and subsection (3) of Rule 23(b). The Court will address each requirement of 23(a) in turn.

### 1. Numerosity

The first requirement is numerosity. While no minimum number of plaintiffs is required, "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir.2001). Here, Plaintiffs propose a class consisting of approximately 250 members, located throughout the United States. This number of geographically diverse plaintiffs supports an

inference that joinder would be impracticable.  In addition, the Court notes that no party has objected that that the numerosity requirement has not been satisfied.  Therefore, Plaintiffs satisfy the numerosity requirement.

### 2. Commonality

In order to show commonality exists, the moving party must demonstrate questions of law and fact exist that are common to the whole class. Fed. R. Civ. P. 23(a).  To do so it is only necessary to show that the named plaintiffs share at least one question of law or fact with the grievances of the prospective class.  Johnston v. HBO Film Management, INC., 265 F.3d 178, 184 (3d Cir. 2001), citing In re Prudential Ins. Co. of Am. Sales Practices, 148 F3d at 310.  In this case commonality is present in more than one respect.  Members of the class share common legal theories such as whether Defendants and others conspired to create, approve and market the Tax Strategies to the Plaintiffs and the Class, whether Defendants were aware that the Tax Strategies lacked economic substance and that therefore any losses attributable to the Tax Strategies would be disallowed by the IRS, and whether Defendants took advantage of a relationship of trust and confidence and used their knowledge of Plaintiffs' finances to solicit Plaintiffs to purchase the Tax Strategies.  Common issues of fact also exist because Plaintiffs claims arise out of the same nucleus of operative facts relating to the purchase of various tax shelters.  Plaintiffs only need to show that they share either a common issue of law or fact with the class and because they have demonstrated both exist, Plaintiffs satisfy the commonality requirement.

### 3. Typicality

The typicality requirement of 23(a) requires courts to determine whether "the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." Baby Neal, 43 F.3d at 57.  Typicality refers to the nature of the claim or defense the class representatives have put forth and not to the specific facts from which the claim or defense arose or to the relief sought.  In re Prudential Ins. Co. Am. Sales Practices Litig., 148 F.3d at 311-12.  Factual differences existing between parties' claims will not render a claim atypical if the claim arises from the same event, practice, or course of conduct, and it is based on the same legal theory.  Id.

Here, Plaintiffs satisfy the typicality requirement because the named Plaintiffs' claims and the claims of the proposed class are all based on the same legal theories.  The central inquiries of the case concern the same events and practices alleged to have been perpetrated by the Defendants, specifically that Class Members were injured as a direct result of fraudulent Tax Strategies developed by Defendants.  Therefore, Plaintiffs' claims are typical of the entire class and this requirement for class certification is satisfied.

### 4. Adequate Representation Requirement

Pursuant to Rule 23, adequate representation hinges on two factors: (1) the plaintiff's attorney must be qualified; and (2) the plaintiff must not have interests antagonistic to those of the class.  Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975).  Here, Plaintiffs have retained highly competent and qualified attorneys.  Milberg Weiss Bershad & Schulman,

LLP has significant experience in class action litigations.  Co-Counsel to the Class includes 1) Carella, Byrne, Baine, Gilfillan, Checci, Stewart & Olstein, 2) McCutchen, Blanton Johnson & Barnette, LLP, 3) the Gilreath Law Firm, P.A., and 4) Wilks, Alper & Harwood, P.C.  Each of these firms are highly competent, with experience in a wide variety of relevant areas.  In particular, the McCutchen Blanton and the Gilreath Law Firm, P.A. have represented several different individuals with tax strategy-related claims against KPMG and Sidley Austin.

It is clear to the Court that the Plaintiffs' interests are aligned with those of the class. Plaintiffs, like the absent class members, were damaged as a result of Defendants' alleged actions, and Plaintiffs would have to prove the same wrongdoing as the absent Class members to establish Defendants' liability.  Therefore, Plaintiffs have satisfied the final requirement of Rule 23(a).

**C. Plaintiff Meets Requirements of Rule 23(b)**

Once the requirements set forth in Rule 23(a) are met, Plaintiffs must satisfy the requirements set forth in at least one of the subsections of Rule 23(b) for a court to certify the class.  Here, Plaintiffs satisfy the requirements set forth in 23(b)(3).  Rule 23(b)(3) states that a court will certify a class action if the court finds "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication."  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) requirements are often referred to as "predominance" and "superiority."  The factors a court must consider when performing this analysis are: (a) the interest of the class members in individually controlling the prosecution or defense of separate

12

actions; (b) whether members of the class have already commenced litigation on any issue

concerning the controversy; (c) the desirability or undesirability of concentrating the litigation of

the claims in the particular forum; and (d) the difficulties likely to be encountered in the

management of a class action.  (Id.)

This Court finds that Rule 23(b)(3) is satisfied.  First, Plaintiffs' case is founded upon the

same legal theories and factual predicate as the other members of the class.  Further, a class

action settlement in this matter serves as an efficient use of judicial resources.  Absent

certification in this action, the Court would be faced with the potential burden of litigating

numerous individual lawsuits, all of which arise from the same operative facts.  Also, class

certification will allow certain Plaintiffs who may not otherwise be able to participate in

individual actions the ability to assert claims against the Defendants.  For these reasons, the

Court finds that Rule 23(b)(3) is satisfied.  Therefore, Plaintiffs' motion for final certification of

the class for settlement purposes is granted.

### III. Approval of the Settlement Agreement

"The decision of whether to approve a proposed settlement of a class action is left to the

sound discretion of the district court." Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir.1975).  In

exercising that discretion, the Court is guided by Federal Rule of Civil Procedure 23(e).  That

rule provides that "[a] class action shall not be dismissed or compromised without the approval

of the court, and notice of the proposed dismissal or compromise shall be given to all members of

the class in such a manner as the court directs." Fed.R.Civ.P. 23(e).  In determining whether to

approve a class action settlement under Rule 23(e), " 'the district court acts as a fiduciary who

must serve as a guardian of the rights of absent class members' " In re Gen. Motors Corp. Pick-

Up Truck Fuel Tank Products Liab. Litig., 55 F.3d 768, 785 (3d Cir.1995) (quoting Grunin v.

Int'l House of Pancakes, 513 F.2d 114, 123 (8th Cir.), cert. denied, 423 U.S. 864 (1975) (citation

omitted));see also In re Linerboard Antitrust Litigation, 321 F.Supp.2d 619, 628 (E.D.Pa. 2004).

Before giving final approval to a proposed class action settlement, the Court must

determine that the settlement is "fair, adequate, and reasonable." Lazy Oil Co. v. Witco Corp.,

166 F.3d 581, 588 (3d Cir. 1999); Walsh v. Great Atlantic & Pacific Tea Co., 726 F.2d 956, 965

(3d Cir.1983). The Third Circuit has identified nine factors that a district court should consider

when making this determination:

(1)    the complexity, expense and likely duration of the litigation;
(2)    the reaction of the class to the settlement;
(3)    the stage of the proceedings and the amount of discovery completed;
(4)    the risks of establishing liability;
(5)    the risks of establishing damages;
(6)    the risks of maintaining the class action through the trial;
(7)    the ability of the defendants to withstand a greater judgment;
(8)    the range of reasonableness of the settlement fund in light of the best
       possible recovery;
(9)    the range of reasonableness of the settlement fund to a possible recovery in
       light of all the attendant risks of litigation.

In re Prudential Ins. Co. of America Sales Practices Litig., 148 F.3d 283, 317 (3d Cir.1998),

quoting Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir.1975). "These factors are a guide and the

absence of one or more does not automatically render the settlement unfair." In re American

Family Enterprises, 256 B.R. 377, 418 (D.N.J. 2000). Rather, the court must look at all the

circumstances of the case and determine whether the settlement is within the range of

reasonableness under Girsh. In re Orthopedic Bone Screw Prod. Liability Litig., 176 F.R.D. 158,

184 (E.D.Pa.1997).

**(1)      The Complexity, Expense and Likely Duration of the Litigation**

The first factor "is intended to capture the probable costs, of both time and money, of continued litigation." In re Lucent Technologies, Inc., Securities Litigation, 307 F. Supp. 2d 633, 642 (D.N.J. 2004) (quotation omitted).  This litigation, were it to continue, would involve intricate legal questions including whether Defendants acted knowingly or recklessly; whether Defendants were aware that the Tax Strategies lacked economic substance and that therefore any losses attributable to the Tax Strategies would be disallowed by the IRS; whether Defendants and others conspired to create, approve and market the Tax Strategies to Plaintiffs and the Class; whether Defendants took advantage of a relationship of trust and confidence and used their knowledge of Plaintiffs' finances to solicit Plaintiffs to purchase the Tax Strategies, whether Defendants failed to disclose that the opinion letter provided in connection with the transactions were not issued independently; and whether members of the Class have sustained damages and, if so, the appropriate measure of damages.  (Am. Comp. ¶216.)  Further, because the Tax Strategies at issue are highly technical in nature, a layperson on a jury may have difficulty comprehending all of the legal theories and operative facts of this litigation.  The parties to this litigation have already expended a great deal of time and energy in this case.  Nonetheless, the parties anticipate that if the litigation were to proceed there would be more discovery, extensive motion practice, including the likelihood of interlocutory and other appeals, and lengthy trial preparation.  The Court notes that such circumstances could extend the litigation for at the very least another few years, a factor that weighs in favor of approval.

15

**(2)      The Reaction of the Class to the Settlement**

The second factor "attempts to gauge whether members of the class support the settlement."

In re Lucent at 643 (quotation omitted).  On November 7, 2005, a Court-approved Notice of Initial

Proposed Settlement was distributed via first class mail to each of approximately 246 potential

members of the Class and to sixty-eight attorneys then-known to represent various Class Members.

See Cirami Aff. dated January 9, 2006 Aff. at ¶¶3 and 5.  Notice of Settlement was also posted on

Class Counsel and the Claims Administrator's respective websites.  A Court-approved Summary

Notice of the Initial Proposed Settlement was published in the national edition of The Wall Street

Journal on November 9, 2005 and in The Newark Star Ledger on November 10, 2005.  After the

parties entered into the Amended Settlement, on March 30, 2006, Class Counsel (via the Claims

Administrator) caused individual copies of the Notice of the Amended Settlement to be mailed, by

first class mail, to all potential members of the Class and to attorneys known to represent various

Class Members.  See Cirami Aff. dated April 24, 2006, ¶6.  An Amended Notice of Settlement was

published in The Wall Street Journal and in The Newark Star Ledger on April 3, 2006.  The Notice

of Amended Settlement informed Class Members of a second opt-out and objection period, in which

Class Members could elect to opt-out of the Amended Settlement or object to the Amended

Settlement until April 20, 2006.

Three groups of class members raised objections to the Initial Proposed Settlement[4],

including Class Members John S. Koo ("Koo"), Allan Abrams ("Abrams") and the Becnel Plaintiffs.

---

[4]Bayerische Hypo-un Vereinsbank, AG (HVB) also objected to the Initial Proposed Settlement.  On April 20, 2006, HVB withdrew its objection on the grounds that it was mooted by the Amended Settlement.

However, no class member has objected to the Amended Settlement or the proposed award of attorneys' fees. Only the Becnel Plaintiffs take issue with the fairness and adequacy of the settlement as a whole. Koo and Abrams challenge certain isolated provisions of the Initial Proposed Settlement, all of which have been addressed and amended by the Amended Settlement. All of the above opt-outs and objections were reviewed and considered by this Court. (See Tr. of Fairness Hearing May 26, 2006.)

Koo objected to three provisions in the Initial Proposed Settlement: 1) reduction of a Claimant's recovery if he or she unsuccessfully sought reconsideration of the Special Master's categorization of his or her claim, 2) confidentiality provisions relating to the Special Master's determination concerning categorization and Special Relief, and 3) that the Special Master's decisions are final and unappealable. Koo's objections are mooted by the Amended Settlement, which eliminates any penalty for moving from Category I to Category II, allows for appeal of the Special Master's determination to the Court, and permits the Special Masters to disclose aggregate information concerning their determination.

Abrams objected to the Initial Proposed Settlement's provision that penalizes Claimants who unsuccessfully petition the Special Master for Special Relief. This objection is also mooted by the Amended Settlement, which eliminated the penalty for unsuccessfully petitioning for Special Relief.

The Becnel Plaintiffs raised several objections to the Initial Proposed Settlement. First, they objected on the grounds that Milberg Weiss did not represent any client when it entered into settlement negotiations with Defendants. This objection was addressed in detail at the Preliminary Approval Hearing conducted by this Court on October 28, 2005 and October 31, 2005. At that

17

hearing, the Court found that Mr. Kottler, the witness presented by the Becnel Plaintiffs, was in fact aware that settlement discussions were being conducted by Milberg Weiss on his behalf, and rejected the Becnel Plaintiff's theory that Milberg Weiss did not represent any clients during the negotiation process.  Other objections raised by the Becnel Plaintiffs include the contention that Class Counsel failed to protect Class Members from the running of the applicable statute of limitations, that Class Members who purchased FLIPS and OPIS were inadequately represented, and that the Settlement is inadequate because it limits Class Members' recovery to their Transaction Costs.  The Court is not impressed with the Becnel Plaintiff's arguments.  They have failed to present any new credible evidence that would warrant reconsideration of this Court's findings at the October 31, 2005 hearing and its November 3, 2005 Supplemental Opinion, wherein it denied the Becnel Plaintiff's motion to disqualify Milberg Weiss as lead counsel.  Other objections raised by the Becnel Plaintiffs are mooted by the Amended Settlement.

In light of the above, the Court finds that the reaction of the class to the settlement weighs in favor of settlement approval.

**(3)    The Stage of the Proceedings and the Amount of Discovery Completed**

Next, "[p]arties should have an 'adequate appreciation' of the merits in settling a case." In re Prudential, 148 F.3d at 319 (quoting In re Gen. Motors Corp., 55 F.3d at 813).  This litigation  is still in the pre-trial stage.  However, settlements reached at earlier stages of proceedings are favored. In re AremisSoft Corp. Securities Litigation, 210 F.R.D. 109, *124 (D.N.J. 2002) (citing In re Computron Software, Inc., 6 F.Supp.2d 313, 318; Weiss v. Mercedes-Benz of North Am., Inc., 899 F.Supp. 1297, 1301 (D.N.J.1995) (settlement approved while the "case is still in the early stages of

discovery"); In re Novacare Sec. Litig., [1995-1996 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 98,930 at 93,500, 1995 WL 605533 (E.D.Pa. Oct. 13, 1995) ("[O]ne of the benefits of settlement at an early stage is avoidance of the expense of extended discovery that might well effect [sic] plaintiffs' proof at trial. When the parties reach an early settlement, it must be fair, adequate, and reasonable but not necessarily identical with the results that might be reached at trial.")).

Class Counsel has already engaged in extensive discovery, and has done so in a very short period of time.  The Initial Complaint filed by Class Counsel was in excess of 100 pages in length, and demonstrates that Class Counsel expended considerable time and effort with the underlying factual and legal issues in this case before even filing this lawsuit.  After filing the Complaint, Class Counsel engaged in significant document discovery, including the review and analysis of over 200,000 documents produced to Plaintiffs by Defendants.  Settlement discussions were conducted over a period of some fourteen months with the supervision and guidance of Judges Politan and Weinstein, and are evidence of Class Counsel's appreciation of the merits and complexity of this litigation.  In sum, the Court finds that it is evident from the submissions of the parties and the issues raised by the parties at the Fairness Hearing that the parties had a full appreciation of the merits during negotiations.  As such, this factor weighs in favor of approval.

**(4)(5)   The Risks of Establishing Liability and  Damages**

In considering the fourth and fifth factors, a court should "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of immediate settlement."  In re Prudential, 148 F.3d at 319. Class Counsel submits that they were able to evaluate the relative merits of each side's case and

enter into a Settlement with a full view of the case's strengths and weaknesses. (Pl. Mem in Support of Approval of Settlement at 20.) Although they believe that Plaintiffs have a strong case for liability and damages, they concede that the outcome of the litigation is not certain. Plaintiffs would have to overcome numerous legal hurdles, including:

- Plaintiffs must prove that the Tax Strategies were indeed unlawful,
- Certain Class Members' claims may be time-barred and thus subject to no recovery at all,
- Class Members would be subject to the risk that they would be found contributorily negligent for their part in implementing Tax Strategies,
- The prospect that a jury would not sympathize with the plight of the high net worth individuals who make up the Class, thereby leading them to limit damages or deny liability,
- Defendants' argument that many Class Members suffered no cognizable damages at all,
- Risk that evidence used against Class Members at trial could be later used against them in criminal proceedings relating to violations of tax laws,
- Ability of a jury of laypersons to understand these complicated Tax Strategies
- Likelihood that even if Plaintiffs were to succeed, Defendants would appeal.

There are substantial risks in litigating this action, and they are clearly outweighed by the benefits of an immediate settlement. In light of the above, the Court finds that the risks of establishing liability and damages weigh in favor of approval of the proposed settlement.

**(6)** **The Risks of Maintaining the Class Action Through the Trial**

The sixth factor evaluates the risks of maintaining the class throughout the trial. Here, the Court has only certified the class for settlement purposes. Under Fed .R.Civ. P 23(a), the Court can decertify or modify a class at any time during litigation if it proves to be unmanageable, and proceeding to trial would entail the risk of decertification. As such, this factor weighs heavily in favor of settlement.

20

**(7)     The Ability of the Defendants to Withstand a Greater Judgment**

The seventh factor "is concerned with whether the defendants could withstand a judgment for an amount significantly greater than the settlement." <u>Girsch</u> at 336.  Class Counsel submit that there is substantial reason to believe that Defendants could not withstand a significantly higher judgment than $178 million (the combined total of the Settlement Payment Amount and the Revised Fee and Cost Application Amount).  In particular, Class Counsel points out that KPMG has already agreed to pay $456 million to the government as part of its Deferred Prosecution Agreement. However, even if Defendants could withstand a greater judgment, the request for a greater judgment would make Plaintiffs' case more difficult and less likely to be settled.  The Court finds that this factor weighs in favor of approval.

**(8)(9)  The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of Litigation Risks**

Finally, for the eighth and ninth factors, a court should consider how "the present value of the damages the plaintiffs would likely recover if successful, appropriately discounted for the risks of not prevailing,...compare[] with the amount of the proposed settlement."  <u>In re Lucent</u>, 307 F. Supp. 2d at 647.  Class Counsel has negotiated a significant recovery for the class: a cash settlement of over $153 million, plus the additional payment of over $24 million for Plaintiffs' attorneys' fees and reimbursement of out of pocket expenses.  Importantly, Class Counsel also notes that based upon reports from lawyers who have settled numerous similar cases on an individual basis, and based upon reports from Judge Weinstein, who has mediated numerous similar cases, on a per-Claimant basis

the proposed Settlement will pay Class Members more than most individuals have been receiving, net of attorneys' fees, in individual settlements.   If Plaintiffs had chosen to proceed with litigation, they would have faced significant legal obstacles and judgment in their favor was in no way guaranteed.  The settlement provides immediate and substantial benefits for the class members and is a much better option than proceeding with a potentially smaller or .  Thus, the reasonableness of the settlement weighs in favor of approval.

In sum, the Court finds that the balance of factors weigh in favor of approval.  The Court further finds that the settlement is fair, reasonable, and adequate.  Accordingly, the Court approves the settlement agreement.  The fee applications will be considered and ruled upon in a separate Opinion after receipt of Class Counsel's supplemental documents.

### III.CONCLUSION

For the reasons expressed above, Plaintiffs' motion for final certification of the class for settlement purposes is **granted**.  Plaintiffs' motion for Final Approval of the Settlement Agreement is **granted.**  The Settlement Agreement is hereby **approved**.  An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
DENNIS M. CAVANAUGH, U.S.D.J.

Date:          June 2, 2006
Original:     Clerk's Office
cc:             All Counsel of Record
                 The Honorable Mark Falk, U.S.M.J.
                 File